# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| HARTFORD ACCIDENT & INDEM. CO., | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-19-00593 |
| ZURICH AM. INS. CO., et al., | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This case involves various insurance companies that allegedly insured Tate Andale, Inc., a Maryland corporation. Between 1958 and 1985, Tate manufactured products containing asbestos and has since been the subject of civil complaints for asbestos-related injuries. Hartford Accident & Indemnity Company now sues the other insurance companies that may have insured Tate, seeking a declaration pursuant to 28 U.S.C. § 2201(a) as to the insurance companies' respective liabilities for Tate's insurance coverage claims for asbestos-related bodily injury claims. Zurich American Insurance Company crossclaims for declaratory judgment, restitution, and subrogation. One of the companies, Pennsylvania National Mutual Casualty Insurance Company ("Penn National"), moves to dismiss all counts of the complaint and crossclaim and, alternatively, to stay proceedings. No hearing is required. *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, the Court will deny Penn National's motions to dismiss and grant its motion to stay.

## I. *Background*

At the motion to dismiss stage, the Court takes the allegations of the complaint as true, *see, e.g., Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997), and construes any disputed

allegations in the light most favorable to the plaintiff, *In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d 334, 376 n.32 (D. Md. 2004) ("[R]esolution of [a] factual dispute is inappropriate when ruling on a motion to dismiss . . . ."). The Court summarizes those allegations in Hartford's complaint that are relevant to the currently pending motions.

Tate "designs and manufactures industrial strainers, filters, valves, and vents, and in the past, supplied certain products that allegedly contained asbestos." (Compl. ¶ 19, ECF No. 1.) The complaint also refers to Tate as "Tate Engineering, Inc." and "Tate Enterprises." (*Id.* ¶ 1.)

In the complaint, Hartford alleges, "[o]n information and belief," that each of the named insurance companies issued insurance policies to Tate or its predecessors. (*Id.* ¶ 12–18.) From September 1958 to September 1964, Penn National issued insurance policies to Tate. (*Id.* ¶ 16.) From March 1964 to June 1970, Zurich insured Tate. (*Id.* ¶ 15.) From June 1970 to June 1986, Hartford itself issued yearly policies of liability insurance to Tate. (*Id.* ¶ 12.) Hartford notes that some of these insurance policies had asbestos exclusions. (*Id.* ¶ 14.) Hartford also alleges that other insurers may have issued policies that provide coverage for asbestos claims. (*Id.* ¶ 18.)

When claimants began to sue Tate, alleging asbestos-related bodily injury ("asbestos suits"), Tate tendered the asbestos suits to Hartford, Zurich, and Penn National for insurance coverage. (*Id.* ¶ 20–21, 24.) Hartford alleges that Hartford and Zurich have been defending Tate against those suits and that Penn National has not participated in the defense. (*Id.*) Each company asserts that it has no coverage obligations for the asbestos suits. (*Id.* ¶ 25–26.) Hartford's complaint seeks a declaration as to which, and to what extent, each insurance company has an obligation to defend or indemnify Tate. (*Id.* ¶ 28, 30.)

In the crossclaim, Zurich adds some allegations and claims. (Zurich's Ans., Counterclaim & Crossclaim, ECF No. 21.) Zurich alleges that the company that is now Tate Andale was

incorporated as Temco Machine Works in 1957. (*Id.* ¶ 8, 11.) In 1966, Temco Machine Works changed its name to Tate Temco. (*Id.* ¶ 9.) In 1985, Tate Temco entered into a purchase agreement with the Andale Company, and its name was changed to Tate Andale. (*Id.* ¶ 10–11.) Zurich repeats Hartford's declaratory judgment claims and adds crossclaims against Penn National for reimbursement, restitution of overpayments, and subrogation.

Before Hartford even filed suit, Penn National sued Tate in March 2017. (Pa. Nat'l Mot. Dismiss Compl. Exh. 1, Civ. No. ADC-17-670 Compl.) Penn National sought a declaration that it "owes no duty under applicable law or the Alleged Policies to indemnify or defend Tate Andale with regard to any claims for injury that occurred during the alleged policy periods of September 20, 1958 to March 9, 1964." (*Id.* at 7.) That case—for purposes of this Memorandum, the "Penn National case"—is currently before another judge in this district, who has ordered that discovery end by February 2020, that the parties file dispositive motions by March 31, 2020, and that trial commence sometime after June 2020. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Tate Andale, Inc.*, Civ. No. ADC-17-670, 7/31/19 Status Report, ECF No. 77. A trial in that case would seek to resolve whether Penn National issued the alleged commercial liability insurance policies and what the terms of those policies were. *See id.*, Memo. Op. at 8–17, ECF No. 59.

## *II. Legal Analysis*

Penn National moves to dismiss the instant complaint for lack of subject matter jurisdiction, (Pa. Nat'l 12(b)(1) Mot. Dismiss Compl., ECF No. 15), and failure to state a claim, (Pa. Nat'l 12(b)(6) Mot. Dismiss Compl., ECF No. 16). In the alternative, Penn National moves to stay. (*Id.*) Penn National also moves to dismiss Zurich's crossclaim for lack of subject matter jurisdiction and failure to state a claim. (Pa. Nat'l Mot. Dismiss CC, ECF No. 41.) Because Penn National advances similar arguments against Hartford's complaint and Zurich's crossclaim, the

3

Court will analyze the motions together, turning first to subject matter jurisdiction and second to failure to state a claim. Then, if necessary, the Court will address whether to stay proceedings.

## A. *Federal Rule of Civil Procedure 12(b)(1)*

"A motion to dismiss based on lack of subject matter jurisdiction pursuant to [Rule 12(b)(1)] raises the question of whether the court has the competence or authority to hear the case." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). The plaintiff bears the burden of establishing subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A challenge to a court's subject matter jurisdiction may be either facial, i.e., the complaint fails to allege facts upon which subject matter jurisdiction can be based, or factual, i.e., the jurisdictional allegations of the complaint are not true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Here, Penn National appears to be making a facial challenge. In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* at 192.

Penn National argues that the court lacks subject matter jurisdiction because Penn National is not an adverse party to Hartford or Zurich and, as such, the proceeding fails to be a case or controversy as required by Article III of the U.S. Constitution. (Pa. Nat'l 12(b)(1) Mot. Dismiss Compl. Mem. at 2, ECF No. 15-1.) Penn National bases this conclusion on the fact that its alleged period of coverage does not overlap with those of Hartford or Zurich. (*Id.* at 3.) Citing Maryland law, Penn National explains that Maryland has adopted a "pro-rata" approach to losses that span multiple insurance policy periods so that the losses are divided among insurers based on the amount of time they each contracted to provide coverage. (*Id.*) In essence, Penn National argues that its liability to Tate, if any, is cabined by its "time on the risk" and is unrelated to Hartford's and Zurich's liability to Tate, if any, which are also cabined by their "time on the risk." (*Id.*)

4

True, under Maryland law, "an insurance company cannot be held liable for periods of risk it never contracted to cover." *Pa. Nat'l Mut. Cas. Ins. Co. v. Roberts*, 668 F.3d 106, 109 (4th Cir. 2012); *see id.* at 111 (affirming that "in lead paint or 'continuous trigger' cases . . . Maryland courts determine an insurer's liability through a 'pro-rata' allocation by 'time on the risk'"). Like in other "continuous trigger" cases, injuries in asbestos cases occur over the course of several years and often across insurance policy periods. *See In re Wallace & Gale Co.*, 385 F.3d 820, 833 (4th Cir. 2004) ("Maryland courts have held that asbestos-related injury begins with exposure, carries forward while the asbestos fibers are in residence and continues through to manifestation of the disease."). Courts across the country have noted that insurance policies in effect at any point from the date of exposure until the manifestation of illness are all triggered. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Porter Hayden Co.*, 331 B.R. 652, 664 (D. Md. 2005) (listing cases). Therefore, determining liability for asbestos exposure depends on many facts of any given claim, including timing, exposure, disease, as well as the terms of the insurance policy.

This analysis of Maryland insurance law will no doubt determine the relative liability of each party in this case. But, it is improper to find a lack of subject matter jurisdiction where, as here, the jurisdictional facts and the facts relating to the merits are so intertwined. *See CBX Techs., Inc. v. GCC Techs., LLC*, 457 F. App'x 299, 301 (4th Cir. 2011). Penn National's motions to dismiss pursuant to Rule 12(b)(1) will be denied.

### B. *Federal Rule of Civil Procedure 12(b)(6)*

Penn National argues that Hartford and Zurich fail to state claims because they fail to make the requisite allegations linking "Tate Engineering" and "Tate Enterprises" to Tate Andale. (Pa. Nat'l 12(b)(6) Mot. Dismiss Compl. Mem. at 4, ECF No. 16-1; Pa. Nat'l Mot. Dismiss CC Mem. at 6, ECF No. 41-1.) Viewing the allegations in the light most favorable to Hartford and Zurich,

5

as the Court must at this stage, it is reasonable to infer that Tate Andale is a successor in interest to the other Tate companies. Penn National also argues that Zurich has failed to state a claim for reimbursement or subrogation for the same reason that subject matter jurisdiction is lacking: that Maryland's "pro-rata" approach to liability renders Zurich's liability and Penn National's liability unrelated. (Pa. Nat'l Mot. Dismiss CC Mem. at 6.) Once again, this argument delves into fact-specific inquiries and does nothing to show that Zurich's crossclaim is insufficient. Because these are the only arguments that Penn National raises in support of its Rule 12(b)(6) motions, Penn National's motions to dismiss for failure to state a claim will be denied too.

*C. Stay*

In the alternative, Penn National moves to stay this proceeding pending an outcome in the Penn National case, *see Pa. Nat'l Mut. Cas. Ins. Co. v. Tate Andale, Inc.*, Civ. No. ADC-17-670. (Pa. Nat'l 12(b)(6) Mot. Dismiss Compl. Mem. at 5.)

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). "In determining whether to grant a stay of proceedings, the Court considers 'the length of the requested stay, the hardship that the movant would face if the motion were denied, the burden a stay would impose on the nonmovant, and whether the stay would promote judicial economy by avoiding duplicative litigation.'" *Donnelly v. Branch Banking & Trust Co.*, 971 F. Supp. 2d 495,

501–02 (D. Md. 2013) (quoting *In re Mut. Funds Inv. Litig.*, MDL No. 1586, 2011 WL 3819608, at *1 (D. Md. Aug. 25, 2011)).

Applying the factors to the circumstances here, the Court concludes that a stay is justified. If the Penn National case goes to trial, it will likely be resolved next summer and answer the question of whether Penn National is liable in this matter. Without the stay, Penn National would not suffer a great hardship by litigating both matters at once as it is currently. That said, with the stay, the other insurance companies, like Hartford and Zurich, would not suffer a great burden, only delay. As Penn National points out, the harm in delay is lessened by the fact that the Penn National case could determine Penn National's liability, which is the point—at least in part—of Hartford's complaint. (Pa. Nat'l 12(b)(6) Mot. Dismiss Mem. at 6.) A stay would promote judicial economy because it would avoid having two courts resolve the same dispute.

Hartford opposes a stay. Hartford first argues that its action is not duplicative and is more comprehensive. Hartford cites *Robertson v. Apker*, 700 F. App'x 301 (4th Cir. 2017), for the proposition that "a court abuses its discretion when it enjoins a party from proceeding in another suit that is not truly duplicative of the suit before it." *Id.* at 302. The cases are not identical, but they are duplicative in that they both seek to decide whether Penn National issued Tate a commercial liability insurance policy and, if so, whether Penn National must defend Tate in the asbestos suits. Hartford second argues that both actions are unsuited to piecemeal resolution and details pieces of evidence that relate to both actions. At this point, staying the proceedings would help avoid piecemeal litigation. *See MBR Constr. Servs., Inc. v. Liberty Mut. Ins. Co.*, Civ. No. GJH-15-14, 2016 WL 3190650, at *2 (D. Md. June 6, 2016) (staying all claims, even those not involved in the ongoing arbitration, to avoid unnecessary piecemeal litigation). Thus, Hartford's argument does not indicate that a stay is inappropriate; rather, it indicates that the actions should

have been brought simultaneously or that Hartford should have intervened in Penn National's suit against Tate. Regardless, such issues are not before the Court.

Because the Penn National case is well underway, and because granting a stay would promote judicial economy, the Court will stay proceedings until the Penn National case is resolved by settlement or trial.

### *III.* *Conclusion*

For the foregoing reasons, an Order shall enter denying Penn National's motions to dismiss and granting its motion to stay.


DATED this 19 day of August, 2019.

BY THE COURT:

James K. Bredar
Chief Judge